Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorneys for Plaintiffs
REBEKAH SPENCER *et al.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| REBEKAH SPENCER, An Individual, STEPHANIE NYHUS, An Individual, CHAKILA SCOTT, An Individual JULIE BELL, An Individual,<br><br>                              Plaintiffs,<br><br>v.<br><br>LEGACY HEALTH, A Public Benefit Corporation, and DOES 1 THROUGH 50, Inclusive,<br><br>                              Defendants | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND ORS 659A.030(1)(a), AND AIDING AND ABETTING RELIGIOUS DISCRIMINATION [ORS 659A.030(1)(g)]**<br><br>**JURY TRIAL REQUESTED** |

Plaintiffs REBEKAH SPENCER, STEPHANIE NYHUS, CHAKILA SCOTT, and JULIE BELL hereby allege as follows:

## **PARTIES**

1.     Plaintiffs are all former employees of Defendant LEGACY HEALTH ("LEGACY") who worked remotely before being placed on leave and ultimately terminated after declining to receive COVID-19 vaccines on religious grounds.

2.     Plaintiffs also are, and at all times herein were, religious practitioners – and thus members of a protected class for purposes of Title VII and ORS 659A.030 – who, as permitted under Or. Admin. R. 333-019-1010(3-(5)(a), sought from LEGACY religious and/or medical exemptions from the Oregon Health Authority's ("OHA") mandate that all healthcare workers in the state be vaccinated against COVID-19 (the "Vaccine Mandate" or the "Mandate").  Not only did LEGACY deny Plaintiffs' religious and/or medical exemptions, LEGACY placed Plaintiffs on unpaid leave before terminating their employment.

3.     Defendant LEGACY is, and at all times herein was, a non-profit public benefit corporation headquartered in Portland, Oregon.  *See* Attached **Exhibit "A"** [a true and accurate copy of LEGACY's proof of registration from the Oregon Secretary of State's website].  LEGACY operates hospitals and healthcare clinics throughout northern Oregon and is, and at all times herein was, an employer within the definition of 42 U.S.C. § 2000e(b).

4.     The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiffs, who therefore sue Defendants under such fictitious names.  Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiffs thereby, as herein alleged.  Plaintiffs will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

5.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

6.     This Court has jurisdiction over Defendant LEGACY pursuant to 28 U.S.C. § 1331 because Plaintiffs' action arises under the laws of the United States.

## VENUE

7.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

8.      Venue is proper in the Court's Portland Division because LEGACY is headquartered in Multnomah County, the events giving rise to this Complaint took place in Multnomah County, and all agents, employees, or other persons working for, or in concert with, Defendant LEGACY with regard to the events giving rise to this case are located in, employed in, and/or residents of Multnomah County.

## GENERAL ALLEGATIONS

9.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

10.     In August 2021 – roughly 18 months after Oregon's then-governor, Kate Brown ("Gov. Brown"), had declared a statewide emergency in response to the arrival of the novel coronavirus ("COVID-19") in the state but which, by that time, was known to have a survival rate exceeding 99 percent – the OHA, pursuant to an executive order from Gov. Brown, sought to limit the spread of the COVID-19 in the state's healthcare facilities by issuing the Vaccine Mandate, which required most healthcare workers statewide to be vaccinated against COVID-19 by October 18, 2021.  *See* Or. Admin. R. 333-019-1010.  However, the Mandate allowed healthcare workers to seek, and the healthcare providers who employed them to grant, exemptions from the vaccination requirement.  *Id.*, subsections (3)-(4).

11.     The OHA's Vaccine Mandate also made clear that the Mandate did not prohibit healthcare employers from complying with the requirements of federal and state laws that prohibit employers from discriminating against employees on the basis of religion.  *See* Or. Admin. R. 333-019-1010(5)(a).

12.    In accordance with the OHA's Vaccine Mandate, LEGACY required its employees to be vaccinated against COVID-19 by September 30, 2021.

13.    LEGACY allowed its employees to request religious and/or medical exemptions from the Vaccine Mandate.  Any employee who sought one had to fill out and submit a form provided by LEGACY and a letter from a religious authority in the employee's faith community explaining, on the religious authority's letterhead, how administration of the COVID-19 vaccine conflicts with bona fide religious tenets or practices of the employee's faith.  LEGACY also permitted employees who had no religious authority to provide a letter on their own behalf explaining their religious objections to receiving a COVID-19 vaccine.

14.    Religious exemption requests submitted by LEGACY employees would be judged by an "exception work group" (the "Exception Committee" or the "Committee").

15.    Aware of religious employees' concerns about the use of fetal tissue from aborted babies in the preparation of COVID-19 vaccines, LEGACY acknowledged on its website that the three manufacturers of COVID-19 vaccines then available in the United States – Pfizer, Moderna, and Johnson & Johnson – all used cells from aborted babies in the research and development of their respective vaccines.  *See* Attached **Exhibit "B"** [a true and accurate copy of the relevant page from LEGACY's website].  LEGACY attempted to justify those manufacturers' actions by asserting that (1) "[f]etal cells that are used are not from recent abortions.  They come from fetal cells from the 1970s and 1980s" and (2) "all fetal cells are removed from the vaccine before" the vaccine is administered.  *Id.*

16.    Plaintiff REBEKAH SPENCER ("SPENCER") is a practicing Catholic who worked for LEGACY for approximately eight months – the last six as a Senior Contract Administrator – starting in February 2021.

17.    Plaintiff STEPHANIE NYHUS ("NYHUS") is a practicing Christian who worked for LEGACY for approximately 2½ years, beginning in April 2019, as a Mental Health Commercial Follow-up Biller.

18.    Plaintiff CHAKILA SCOTT ("SCOTT") is a practicing Christian who worked for LEGACY for roughly six years as a Care Coordinator Specialist.

19.    Plaintiff JULIE BELL ("BELL") is a practicing Christian who worked for LEGACY for approximately 26 years as a Clinical Charge Capture Analyst Registered Nurse.

20.    At the time LEGACY terminated Plaintiffs' employment, all four Plaintiffs were working remotely.

21.    Plaintiffs were qualified for their respective positions and had exemplary employment records.

22.    Because Plaintiffs worked remotely and not in any of LEGACY's hospitals, Plaintiffs stood little to no chance of spreading COVID-19 to their co-workers or any of LEGACY's patients.

23.    In August 2021, SPENCER, NYHUS, and SCOTT submitted religious exception requests to LEGACY.  *See* Attached **Exhibits "C"-"E"** [true and accurate copies of the religious exception requests submitted by SPENCER, NYHUS, and SCOTT, respectively].[1]  BELL submitted her religious exception request on or about September 28, 2021.  *See* Attached **Exhibit "F"** [a copy of BELL's religious exception request].

24.    All four Plaintiffs cited their religious objections to abortion and COVID-19 vaccines' connection to abortion, among other concerns, as a primary reason why they were unable to receive COVID-19 vaccines.  *See* Exs. "C"-"F."

---

[1] SCOTT's request includes a letter signed by her pastor.  She did not provide her own letter because she believed the letter from her pastor adequately stated her religious objection to receiving a COVID-19 vaccine.

25.     Plaintiffs noted in their exemption requests that LEGACY could easily accommodate their requests by allowing them to continue working remotely. *See* Exs. "C"-"F."  Such an accommodation would have been reasonable, imposed no undue hardship on LEGACY, and allowed LEGACY to pursue its mission of protecting its staff and patients from potential exposure to COVID-19.

26.     Even so, LEGACY denied all four Plaintiffs' religious exception requests on the same two grounds: lack of consistency, and lack of specificity.  *See* Attached **Exhibits "G"-"J"** [true and accurate copies of the denial letters submitted to SPENCER, NYHUS, SCOTT, and BELL, respectively].

27.     Plaintiffs' exemption requests were processed through LEGACY's headquarters in Portland.  The e-mails denying Plaintiffs' request were sent from LEGACY's headquarters in Portland as well.

28.     Concerning the consistency criterion, LEGACY made no allowance for the possibility that any of its employees (1) had received a vaccine as a child but stopped receiving them as adults; (2) held religious views concerning vaccines that had evolved since previously receiving vaccines as adults; and/or (3) did not have religious objections to vaccines in general, but did have a religious objection to COVID-19 vaccines due to their manufacturers' use of cells from aborted babies in the vaccines' research and development.  LEGACY also made no allowance for the Christian doctrine of repentance – i.e., turning away from past sins and toward obedience to God by refusing to commit those sins any longer.

29.     Concerning the specificity criterion, it is unclear how specific LEGACY's Exception Committee wanted religious objectors' statements of objection to COVID-19 vaccines to be or what information the Committee felt was missing from Plaintiffs' exemption requests.  However, given that the Committee reportedly rejected the exemption requests of nearly 800 employees – all of whom

received the same standard e-mail informing them that LEGACY had rejected their requests, and all of whose requests had been rejected on the same grounds as Plaintiffs' – what is clear is that few, if any, LEGACY employees were able to provide enough specificity to satisfy the Committee.

30.    The reasons LEGACY gave for rejecting Plaintiffs' request for a religious exemption from receiving a COVID-19 vaccine were thus meritless.

31.    LEGACY predestined Plaintiffs for unpaid leave and termination and did so not based on individualized assessments of Plaintiffs' religious exemption requests, but as part of an effort to purge people of faith from LEGACY's hospitals.  LEGACY's Exception Committee paid little to no attention to how much or how little detail employees who sought religious exemptions included in their exemption requests – the Committee simply denied exemption requests across the board, with few, if any, exceptions.

32.    LEGACY did not engage in a good-faith, interactive exploration of potential accommodations with any of its employees, including Plaintiffs, as Title VII requires.  LEGACY also did not give Plaintiffs the opportunity to propose other accommodations that would impose no undue hardship to LEGACY while still aligning with LEGACY's COVID-19 mitigation goal.

33.    LEGACY attempted to justify the Exception Committee's blanket, across-the-board denials of religious exemption requests like Plaintiffs' by offering the lame excuse that "there is no ideal way to determine a sincerely held religious belief[.]"  *See* Exs. "G"-"J."

34.    On October 7, 2021, NYHUS' supervisor, Eric Soto sent her a message asking about her timecard and asked her to let him know if she had "reconsidered [her] decision on the vaccine," a question which Plaintiff NYHUS felt was coercive.

35.     BELL appealed the Exception Committee's decision on October 1, 2021, on the bases that (1) she had been working remotely for a year, (2) she not been in contact with patients or coworkers, (3) she had a physician's note about not getting a COVID-19 vaccine, and (4) previous vaccination status does not change the sincerity of her truly held religious beliefs.

36.     The Exception Committee responded to LEGACY on October 13, 2021, stating that after "Legacy reviewed appeals to ensure the vaccine workgroup's process was followed properly," the Committee concluded that "all steps in the exception review process were followed and the denials of your exception requests stand."  *See* Ex. "J."

37.     The Exception Committee went on to restate that her options to receive the COVID-19 vaccine, resign, or be terminated remained the same; that the Committee's decision is final; and that "[t]here is no more information that will be forthcoming through this process."  *See* Ex. "J."

38.     LEGACY's response to BELL's appeal does not indicate any consideration to the additional information BELL asked the Exception Committee to review.  Rather, it seems that the Committee just looked over its initial decision and came to the same conclusion.  *See* Ex. "J."

39.     LEGACY's response also strongly implies that LEGACY will not be convinced to consider further information from Plaintiff BELL about her religious or medical accommodation request.  *See* Ex. "J."

40.     On October 18, 2021 BELL e-mailed Treva Vetter, LEGACY's Manager of Clinical Documentation – with LEGACY's Human Resources department and Melanie Westrick ("Westrick"), LEGACY's Senior Director of Care Management, cc'd – indicating her willingness to continue working for LEGACY from home and stating her hopes that LEGACY would reevaluate her exemption requests, especially in light of her almost 27 years of employment.

BELL further stated that she was a remote employee, not subject to the OHA's Vaccine Mandate, and thus did not create an undue hardship for LEGACY.

41.    That same day, Westrick replied and informed BELL that "no more information will be forthcoming. We are unable to engage in individual, detailed conversations about this decision. The option you have is to request an appeal that is solely focused on ensuring the process was followed. The appeal does not include another substantive review of the case by a multi-disciplinary team." *See* Ex. "J."

42.    If LEGACY will allow those who, after being denied an exemption request, receive the COVID-19 vaccine to continue employment with them but will refuse to elaborate on or reconsider decisions made in regards to denied exemption requests, they are essentially treating those employees whom they have placed on leave as if they were already terminated.

43.    During this waiting period while on unpaid administrative leave, Plaintiffs are essentially told that the only way for them to keep their employment and regain their ability to make a livelihood with LEGACY is to violate their sincerely held religious beliefs and receive the COVID-19 vaccination.

44.    After rejecting Plaintiffs' religious exemption requests, LEGACY gave Plaintiffs three options: (1) Receive a COVID-19 vaccine, and thereby violate their sincerely held religious beliefs as a condition of remaining employed; (2) take no action and be placed on unpaid administrative leave on October 1, 2021, with termination following on October 19, 2021; or (3) resign.

45.    Unable to abandon their sincerely held religious beliefs by receiving a COVID-19 vaccine and fearful that they would not be eligible for unemployment benefits if they resigned, Plaintiffs reluctantly chose the second option.

46.    LEGACY terminated the employment of NYHUS, SCOTT, and BELL on October 19, 2021.  LEGACY terminated SPENCER's employment on

January 20, 2022, roughly four months after allowing SPENCER to go on medical leave due to multiple medical conditions arising from extreme stress suffered while facing the impending loss of her employment.

47.    Due to LEGACY's termination of their employment and their difficulty in obtaining comparable employment with other employers, Plaintiffs have incurred economic damages as follows:

  a. SPENCER: Lost annual salary of $104,000 and her upcoming annual salary increase; personal and family benefits; full retirement plan; substantial medical expenses; medical, dental, vision, and disability insurance.

  b. NYHUS: Lost annual salary of around $45,000; employee benefits package

  c. SCOTT: Loss of more than $4,300 per month in salary and nearly $1,700 per month in retirement plan contributions; inability to obtain unemployment benefits

  d. BELL: Lost annual salary of $130,000; loss of much-needed health insurance for family of six; loss of pay differential for holding Bachelor of Science degree in nursing; loss of accrued vacation time; loss of matching contributions to retirement account

48.    Due to LEGACY's termination of their employment and difficulty in obtaining comparable employment with another employer, Plaintiff SPENCER has suffered the following nonmonetary damages:

  a. SPENCER: Emotional distress, anxiety, insomnia, and depression to the point of being put on doctor-recommended medical leave. The effects of the emotional distress on SPENCER's body weakened her immune system and she suffered an issue with her eye and a bone infection in her hand, which was worsened by

work-related stress. SPENCER was hospitalized, had surgery, and was on intravenous medications for 12 weeks.

b. NYHUS: Anxiety and depression

c. SCOTT: Emotional stress due to loss of employment, anxiety, physical symptoms related to stress and anxiety

d. BELL: Mental and emotional trauma from losing employment; pressure from being family's sole income earner

49.     As a condition of filing the herein lawsuit, Plaintiffs have obtained right-to-sue letters from either Oregon's Bureau of Labor & Industries or the Equal Employment Opportunity Commission.  Those letters are attached hereto as **Exhibits "K"-"N."**

50.     Attached hereto as **Exhibits "O"-"R"** are printouts from the website TimeandDate.com showing when the 90-day statutes of limitations set forth in each right-to-sue letter is set to expire.  Plaintiffs included these printouts to show they timely filed this lawsuit.

## FIRST CAUSE OF ACTION:
### Violation of Title VII
### [42 U.S.C. § 2000e-2]
### Against Defendant LEGACY

51.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

52.     Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

53.     For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

54.     Defendant LEGACY qualifies as an employer under Title VII.

55.     The term "religion," for purposes of Title VII, "includes all aspects of religious observance and practice, as well as belief …" 42 U.S.C. § 2000e(j).

56.     As religious practitioners, Plaintiffs belong to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a)(1).

57.     Plaintiffs have bona fide religious beliefs that they cannot violate their consciences and receive vaccines derived from the cells of babies whose lives were taken via abortion or whose manufacturer used cells from aborted fetuses in the research, testing, and development of the vaccine, nor can they put into their bodies anything which they believe to be harmful, nor can they violate their consciences.

58.     Plaintiffs' bona fide religious beliefs conflicted with their employment-related duty to receive a COVID-19 vaccine in accordance with the OHA's Mandate, as the COVID-19 vaccines available on the market in 2021 were all made by manufacturers who used cells from aborted fetuses in the vaccines' testing and development and/or were in violation of Plaintiffs' consciences.

59.     Plaintiffs informed their employer, Defendant LEGACY, of the conflict between their religious beliefs concerning abortion and their employment-related duty to receive a COVID-19 vaccine.  *See supra* and Exhibits "C"-"F."

60.     Defendant LEGACY subjected Plaintiffs to discriminatory treatment by subjecting them to three adverse employment actions:

61.     Threatening to place them on unpaid leave and ultimately terminate their employment if they did not receive a vaccine [*see* Exhibits "G"-"J"];

   a.  Placing them on unpaid leave on October 1, 2021; and

   b.  Terminating their employment on or about October 19, 2021 or January, 20, 2022.

62.    Defendant LEGACY made no attempt to accommodate Plaintiffs' sincerely held religious beliefs, nor did LEGACY assert to Plaintiffs that LEGACY would incur undue hardship by accommodating their beliefs.  LEGACY simply attempted to justify its denials of Plaintiffs' religious exemption requests by asserting that the Exception Committee found Plaintiffs' asserted beliefs to lack consistency and specificity – a bogus assertion on both grounds.

63.    Defendant LEGACY offered Plaintiffs no religious accommodations even though a reasonable accommodation was available – specifically, the accommodation of letting Plaintiff continue working remotely.  This would have allowed Plaintiffs to continue working while serving LEGACY's interest in significantly limiting the likelihood that its employees would contract and spread COVID-19 to their co-workers or to LEGACY's patients.

64.    Defendant LEGACY would have incurred no undue hardship by accommodating Plaintiffs' religious beliefs, as Plaintiffs were already working 100 percent remotely and could easily have continued to do so.  Instead, Defendant LEGACY threatened to, and ultimately did, place Plaintiffs on unpaid leave and subsequently fire them.

65.    Animus toward Plaintiffs' religious beliefs is truly what motivated Defendant LEGACY to terminate Plaintiffs' employment, any assertion LEGACY might make to the contrary notwithstanding.

66.    Attempting to comply with the OHA's Vaccine Mandate is no excuse: The Mandate expressly allowed LEGACY to grant religious exemptions to its employees and made clear that the Mandate did not prohibit LEGACY from complying with Title VII.  See Or. Admin. R. 333-019-1010(3)-(5)(a).

67.    Based on the foregoing, Defendant LEGACY has discriminated against Plaintiffs in violation of Title VII.

## SECOND CAUSE OF ACTION:
### Violation of State Law Prohibiting Religious Discrimination
### [ORS 659A.030(1)(a)]
### Against Defendant LEGACY

68.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

69.    Like Title VII, ORS 659A.030(1)(a) prohibits employers from discharging individuals from employment on the basis of religion.

70.    Because Oregon's state law prohibiting employers from discriminating on the basis of religion is modeled after Title VII, and because the analysis for religious discrimination claims under both statutes is identical [*see Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1022 (D. Or. 2008)], Plaintiffs decline to restate the facts as set forth in their first cause of action, as those facts are already incorporated as though fully set forth herein.

71.    Under 42 U.S.C. § 2000e-7, nothing in 42 U.S.C. § 1981a(b)(3), which caps the amount of non-pecuniary and punitive damages that can be awarded to Plaintiffs, "shall be deemed to exempt or relieve any person from liability, duty, penalty, or punishment provided by any present or future law of any State[.]"  In other words, an Oregon jury is free to exceed any applicable federal dollar limit in accordance with Oregon law.

72.    Under Oregon law, a jury may award up to $500,000 in noneconomic damages.  *See* ORS 31.710(1).  Oregon law defines "noneconomic damages" to include "subjective, nonmonetary losses, including but not limited to … mental suffering, emotional distress, … inconvenience and interference with normal and usual activities apart from gainful employment."  ORS 31.705(2)(b)

73.    As stated *supra*, Plaintiffs have endured mental suffering and emotional distress due to LEGACY's unlawful discrimination against them.

74.    ORS 659A.885(3) allows for punitive damages against employers such as Defendant LEGACY who violate ORS 659A.030(1)(a).  Oregon law places no cap on punitive damages.  *See Smith v. Ethicon, Inc.*, 2022 U.S. Dist. 98543 at *2 (D. Or. June 2, 2022).

75.    Based on the foregoing, in addition to violating Title VII, Defendant LEGACY has violated ORS 659A.030(1)(a).

### THIRD CAUSE OF ACTION:
### Aiding and Abetting Religious Discrimination
### [ORS 659A.030(1)(g)]
### Against Defendants DOES 1-50

76.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

77.    ORS 659A.030(1)(g) prohibits any person from aiding and abetting an employer from engaging in employment discrimination.

78.    In their roles as members of Defendant LEGACY's Exceptions Committee, Defendants DOES 1 THROUGH 50 (the "DOES") – whose identities have yet to be determined, and whom Plaintiffs intends to add as Defendants after learning their identities through discovery – acted in concert with, or gave substantial assistance to, LEGACY in unlawfully discriminating against Plaintiffs on account of Plaintiffs' religion.  The DOES did this knowing it was unlawful for LEGACY, as Plaintiffs' employer, to engage in religious discrimination against Plaintiffs.

79.    Because Defendant LEGACY carried out its religious discrimination against Plaintiffs with the assistance of the DOES, the Court should hold the DOES individually and personally liable for their conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants LEGACY and DOES 1 THROUGH 50 as follows:

### **ON ALL CAUSES OF ACTION:**

1.    For economic damages in an amount according to proof at trial;

2.    For non-economic damages in an amount according to proof at trial;

3.    For punitive damages in an amount according to proof at trial;

4.    For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

5.    For such other and further relief as the Court may deem proper.

Dated: May 22, 2023        PACIFIC JUSTICE INSTITUTE

__/s/ RAY D. HACKE_____
Ray D. Hacke
Attorneys for Plaintiffs
REBEKAH SPENCER *et al.*

# EXHIBIT "A"



## Business Name Search

| New Search | Printer Friendly | **Business Entity Data** | | | 10-31-2022 14:31 | |
|---|---|---|---|---|---|---|

| Registry Nbr | Entity Type | Entity Status | Jurisdiction | Registry Date | Next Renewal Date | Renewal Due? |
|---|---|---|---|---|---|---|
| 091184-15 | DNP | ACT | OREGON | 11-04-1970 | 11-04-2022 | **YES** |
| Entity Name | LEGACY HEALTH | | | | | |
| Foreign Name | | | | | | |
| Non Profit Type | PUBLIC BENEFIT | | | | | |

## Online Renewal:

Renew Online

Click here to generate and print an annual report.

| New Search | Printer Friendly | **Associated Names** | | |
|---|---|---|---|---|

| Type | PPB | PRINCIPAL PLACE OF BUSINESS | | |
|---|---|---|---|---|
| Addr 1 | LEGAL SERVICES DEPARTMENT | | | |
| Addr 2 | 1919 NW LOVEJOY STREET | | | |
| CSZ | PORTLAND | OR | 97209 | Country UNITED STATES OF AMERICA |

*Please click here for general information about registered agents and service of process.*

| Type | AGT | REGISTERED AGENT | | Start Date | 09-17-2021 | Resign Date |
|---|---|---|---|---|---|---|
| Name | ALEXANDER | | GLADNEY | | | |
| Addr 1 | 1919 NW LOVEJOY ST | | | | | |
| Addr 2 | | | | | | |
| CSZ | PORTLAND | OR | 97209 | Country | UNITED STATES OF AMERICA | |

| Type | MAL | MAILING ADDRESS | |
|---|---|---|---|
| Addr 1 | 1919 NW LOVEJOY | | |
| Addr 2 | | | |
| CSZ | PORTLAND | OR | 97209 | Country UNITED STATES OF AMERICA |

| Type | PRE | PRESIDENT | | Resign Date |
|---|---|---|---|---|
| Name | KATHRYN | | CORREIA | |

| Addr 1 | 1919 NW LOVEJOY ST | | | | | |
|---|---|---|---|---|---|---|
| Addr 2 | | | | | | |
| CSZ | PORTLAND | OR | 97209 | | Country | UNITED STATES OF AMERICA |

| Type | SEC | SECRETARY | | | Resign Date | |
|---|---|---|---|---|---|---|
| Name | ALEXANDER | | GLADNEY | | | |
| Addr 1 | LEGAL SERVICES DEPARTMENT | | | | | |
| Addr 2 | 1919 NW LOVEJOY | | | | | |
| CSZ | PORTLAND | OR | 97209 | | Country | UNITED STATES OF AMERICA |

**New Search**      **Printer Friendly**      ## Name History

| Business Entity Name | Name Type | Name Status | Start Date | End Date |
|---|---|---|---|---|
| LEGACY HEALTH | EN | CUR | 04-05-2010 | |
| LEGACY HEALTH SYSTEM | EN | PRE | 03-31-1989 | 04-05-2010 |
| HEALTHLINK | EN | PRE | 10-11-1985 | 03-31-1989 |
| METROPOLITAN HOSPITALS, INC. | EN | PRE | 05-19-1971 | 10-11-1985 |
| SOUTHWEST HOSPITAL | EN | PRE | 11-04-1970 | 05-19-1971 |

Please read before ordering Copies.

**New Search**      **Printer Friendly**      ## Summary History

| Image Available | Action | Transaction Date | Effective Date | Status | Name/Agent Change | Dissolved By |
|---|---|---|---|---|---|---|
| | AMENDED ANNUAL REPORT | 09-17-2021 | | FI | Agent | |
| | AMENDED ANNUAL REPORT | 10-28-2020 | | FI | Agent | |
| | RESTATED ARTICLES | 01-31-2020 | | FI | | |
| | RESTATED ARTICLES | 01-31-2020 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-25-2019 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-13-2018 | | FI | | |
| | RESTATED ARTICLES | 12-18-2017 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-15-2017 | | FI | | |
| | AMENDED ANNUAL REPORT | 09-21-2016 | | FI | | |
| | RESTATED ARTICLES | 09-19-2016 | | FI | | |
| | RESTATED ARTICLES | 05-31-2016 | 06-01-2016 | FI | | |
| | AMENDED ANNUAL REPORT | 10-05-2015 | | FI | | |
| | AMENDED ANNUAL REPORT | 10-13-2014 | | FI | | |

| Document | Date | Date 2 | Status | Note |
|---|---|---|---|---|
| RESTATED ARTICLES | 04-18-2014 | | FI | |
| AMENDED ANNUAL REPORT | 09-16-2013 | | FI | |
| CHANGE OF REGISTERED AGENT/ADDRESS | 09-11-2013 | | FI | Agent |
| REINSTATEMENT AMENDED | 03-14-2013 | | FI | |
| ADMINISTRATIVE DISSOLUTION | 01-04-2013 | | SYS | |
| AMENDED ANNUAL REPORT | 10-25-2011 | | FI | |
| AMENDED ANNUAL REPORT | 10-21-2010 | | FI | |
| RESTATED ARTICLES | 04-05-2010 | | FI | |
| ARTICLES OF AMENDMENT | 04-05-2010 | | FI | Name |
| AMENDED ANNUAL REPORT | 11-03-2009 | | FI | |
| AMENDED ANNUAL REPORT | 10-29-2008 | | FI | |
| AMENDED ANNUAL REPORT | 11-07-2007 | | FI | |
| RESTATED ARTICLES | 10-30-2007 | | FI | |
| AMENDED ANNUAL REPORT | 10-20-2006 | | FI | |
| ANNUAL REPORT | 01-04-2006 | | FI | |
| RESTATED ARTICLES | 05-05-2005 | | FI | |
| REINSTATEMENT AMENDED | 01-27-2005 | | FI | |
| ADMINISTRATIVE DISSOLUTION | 12-30-2004 | | SYS | |
| RESTATED ARTICLES | 12-10-2003 | | FI | |
| ANNUAL REPORT PAYMENT | 12-10-2003 | 12-09-2003 | SYS | |
| ANNUAL REPORT PAYMENT | 10-17-2002 | | SYS | |
| ANNUAL REPORT PAYMENT | 11-02-2001 | | SYS | |
| STRAIGHT RENEWAL | 11-20-2000 | | FI | |
| NB AMENDMENT | 11-14-2000 | | FI | |
| AMENDED RENEWAL | 12-29-1999 | | FI | |
| NB AMENDMENT | 01-28-1999 | | FI | |
| CHANGED RENEWAL | 11-06-1998 | | FI | |
| AGENT/AUTH REP CHNG | 11-06-1998 | | FI | |
| STRAIGHT RENEWAL | 10-27-1998 | | FI | |
| NB AMENDMENT | 06-24-1998 | | FI | |

| | | | | |
|---|---|---|---|---|
| MERGER | 04-16-1998 | | FI | |
| NB AMENDMENT | 04-03-1998 | | FI | |
| AGENT/AUTH REP CHNG | 01-30-1998 | | FI | |
| STRAIGHT RENEWAL | 10-24-1997 | | FI | |
| NB AMENDMENT | 02-28-1997 | | FI | |
| STRAIGHT RENEWAL | 12-18-1996 | | FI | |
| STRAIGHT RENEWAL | 11-03-1995 | | FI | |
| NB AMENDMENT | 06-02-1995 | | FI | |
| ASSOCIATED NAME CHNG | 06-02-1995 | | FI | |
| STRAIGHT RENEWAL | 10-10-1994 | | FI | |
| NB AMENDMENT | 12-30-1993 | | FI | |
| AMENDED RENEWAL | 09-27-1993 | | FI | |
| MERGER | 04-06-1993 | | FI | |
| AMENDED RENEWAL | 10-09-1992 | | FI | |
| NB AMENDMENT | 10-07-1992 | | FI | |
| ASSOCIATED NAME CHNG | 10-07-1992 | | FI | |
| AGENT/AUTH REP CHNG | 06-26-1992 | | FI | |
| NB AMENDMENT | 06-16-1992 | | FI | |
| ASSOCIATED NAME CHNG | 06-16-1992 | | FI | |
| AMENDED RENEWAL | 09-26-1991 | | FI | |
| NB AMENDMENT | 03-25-1991 | | FI | |
| NB AMENDMENT | 02-06-1991 | | FI | |
| MERGER | 12-21-1990 | | FI | |
| AGENT/AUTH REP CHNG | 10-29-1990 | | FI | |
| AMENDED RENEWAL | 10-29-1990 | | FI | |
| NB AMENDMENT | 12-22-1989 | | FI | |
| AMENDED RENEWAL | 11-01-1989 | | FI | |
| CORRECTION OF ANNUAL | 05-11-1989 | | FI | |
| NB AMENDMENT | 04-12-1989 | | FI | |
| MERGER | 03-31-1989 | | FI | |
| ENTITY NAME CHANGE | 03-31-1989 | | FI | |
| ASSOCIATED NAME CHNG | 03-31-1989 | | FI | |
| NB AMENDMENT | 03-31-1989 | | FI | |
| NB AMENDMENT | 01-26-1989 | | FI | |
| AMENDED RENEWAL | 10-20-1988 | | FI | |
| AMENDED RENEWAL | 11-09-1987 | | FI | |
| ASSOCIATED NAME | 10-19-1987 | | FI | |

| | | | | | |
|---|---|---|---|---|---|
| | CHNG | | | | |
| | NB AMENDMENT | 04-09-1987 | | FI | |
| | STRAIGHT RENEWAL | 10-08-1986 | | FI | |
| | ASSOCIATED NAME CHNG | 04-02-1986 | | FI | |
| | STRAIGHT RENEWAL | 11-21-1985 | | FI | |
| | RESTATED ARTICLES | 10-11-1985 | | FI | |
| | ENTITY NAME CHANGE | 10-11-1985 | | FI | |
| | NC AMENDMENT | 09-30-1985 | | FI | |
| | STRAIGHT RENEWAL | 11-29-1984 | | FI | |
| | NC AMENDMENT | 11-16-1984 | | FI | |
| | NC AMENDMENT | 09-10-1984 | | FI | |
| | RESTATED ARTICLES | 05-05-1983 | | FI | |
| | AMENDMENT | 03-21-1975 | | FI | |
| | AMENDMENT | 01-08-1973 | | FI | |
| | AMENDMENT | 05-19-1971 | | FI | |
| | ENTITY NAME CHANGE | 05-19-1971 | | FI | |
| | NEW | 11-04-1970 | | FI | |

# EXHIBIT "B"

Legacy Health

# Top COVID-19 vaccine safety questions

Updated September 22, 2021

- Can I trust the vaccine approval process?
- Is the vaccine safe?
- Is the vaccine safe for pregnancy?
- Is the vaccine safe if I have an autoimmune disorder?
- Do I still need the vaccine if I have had COVID-19? What about natural immunity?
- Why should I get the vaccine if people who got the vaccine are still getting sick?
- What is the difference between the Pfizer, Moderna, and Johnson & Johnson (J&J) vaccines?
- How does mRNA affect my body?
- What about long term side effects?
- How is the FDA-approved Pfizer vaccine different than the EUA-approved Pfizer vaccine? What is Comirnaty?
- Do the vaccines include fetal cells?
- What if I or someone I live with recently got sick with COVID-19? When do I get my vaccine?

## Can I trust the vaccine approval process?

- Yes. Clinical studies can take a long time because it usually takes a long time to find enough volunteers and people who have the disease. We did not have that problem with COVID-19.
- Researchers were able to make the clinical trial process more efficient while keeping safety a top priority.
- Reference: Unwavering Regulatory Safeguards for COVID-19 Vaccines | Vaccination | JAMA | JAMA Network



LEGACY
H E A L T H

Exhibit 1

## Do the vaccines include fetal cells?

- No. The vaccines do not include any fetal cells.

- Pfizer and Moderna used fetal cells when researching the vaccines to see if the vaccines would work. Johnson & Johnson use fetal cells to prepare the vaccine, but it is purified and all fetal cells are removed from the vaccine before you get it.

- Fetal cells that are used are not from recent abortions. They come from fetal cells from the 1970s and 1980s.

- References: <u>COVID-19 Vaccines & Fetal Cell Lines</u> and <u>COVID-19 Vaccines and Fetal Cells (Michigan DHHS)</u>


## What if I or someone I live with recently got sick with COVID-19? When do I get my vaccine?

- If you had COVID-19, you can get the vaccine as soon as you are done with isolation. This is when you do not have symptoms anymore and it has been at least 10 days since your symptoms first started. Check with your doctor if you go to the hospital or if you are immunocompromised.

- If you are exposed to someone with COVID-19, you can get the vaccine as soon as you are done with quarantine. This means after 14 days without any symptoms or sooner if you got a negative COVID-19 test.

- If you got a COVID monoclonal antibody treatment (casirivimab/imdevimab, sotrovimab, or bamlanivimab/etesevimab), you should wait 90 days before you get the vaccine.

- References: <u>When to Get the Covid Vaccine After Having Covid – Cleveland Clinic</u> and <u>Frequently Asked Questions about COVID-19 Vaccination | CDC</u> and <u>COVID-19 Quarantine and Isolation | CDC</u>

**Exhibit 1**

<u>C-1</u>
<u>Page 10</u>

9

# EXHIBIT "C"

August 20, 2021

Rebekah Spencer
995 E Marquam Street
Mount Angel, OR 97362

Re Covid-19 Vaccination Religious Exemption

Legacy Health Human Resources:

Per your request, attached please find a letter from my religious authority from my faith community, on his letterhead, explaining how administration of the COVID-19 vaccine conflicts with the bona fide religious tenets of my Catholic faith. I am a practicing Catholic.

Per the faith of my church, vaccination is not morally obligatory in principle and so must be voluntary. Furthermore, there is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions. It is permissible to use such vaccines only under certain case-specific conditions, based on a judgment of conscience.

A Catholic's informed judgments about the proportionality of medical interventions are to be respected. Catholic doctrine teaches that a person is morally required to obey his or her sure conscience. A Catholic may judge it wrong to receive certain vaccines for a variety of reasons consistent with these teachings, and there is no authoritative Church teaching universally obliging Catholics to receive any vaccine. An individual Catholic may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines. More generally, a Catholic might refuse a vaccine based on the Church's teachings concerning therapeutic proportionality. Therapeutic proportionality is an assessment of whether the benefits of a medical intervention outweigh the undesirable side-effects and burdens in light of the integral good of the person, including spiritual, psychological, and bodily goods. It can also extend to the good of others and the common good, which likewise entail spiritual and moral dimensions and are not reducible to public health. The judgment of therapeutic proportionality must be made by the person who is the potential recipient of the intervention in the concrete circumstances, not by public health authorities or by other individuals, including employers, who might judge differently in their own situations or faith traditions.

At the core of the Church's teaching are the first and last points listed above: vaccination is not a universal obligation and a person must obey the judgment of his or her own informed and certain conscience. In fact, the Catechism of the Catholic Church instructs that following one's conscience is following Christ Himself:

In all he or she says and does, a person is obliged to follow faithfully what he or she knows to be just and right. It is by the judgment of his or her conscience that a person perceives and recognizes the prescriptions of the divine law: "Conscience is a law of the mind; yet [Christians] would not grant that it is nothing more; . . . [Conscience] is a messenger of him, who, both in nature and in grace, speaks to us behind a veil, and teaches and rules us by his representatives. Conscience is the aboriginal Vicar of Christ."

Covid-19 Vaccination Religious Exemption
Page 1 of 2

If a Catholic comes to an informed and sure judgment in conscience that he or she should not receive a vaccine, then the Catholic Church requires that the person follow this certain judgment of conscience and refuse the vaccine. The Catechism is clear: "Man has the right to act in conscience and in freedom so as personally to make moral decisions. 'He must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters.'" To be forced to do so would be discrimination and harassment, especially on the part of an employer.

Of note, I am also a remote employee. I do not work or do business in any Legacy facilities nor am I clinical or patient facing.

The phrases and circumstances of this letter are regarding my personal health information and my religious beliefs. This is private information that I am sharing with you, my employer, under duress of threat of termination by your recent policy and announcements regarding mandated requirements of Covid-19 vaccinations. This information is confidential. Please confirm your receipt of my exemption at your earliest convenience, and please do not hesitate to reach out with any questions. Thank you.

Respectfully submitted,

Rebekah Spencer
Senior Contracts Administrator
Legacy Health

Attachment: Letter from Fr. Ralph Recker, OSB



# St. Mary Catholic Church

*A Roman Catholic Parish in the Benedictine Tradition since 1881*

August 18, 2021

To Whom It May Concern,

Rebekah Spencer is a baptized Catholic seeking a religious exemption from an immunization requirement. This letter explains how the Catholic Church's teachings may lead individual Catholics, including Rebekah Spencer, to decline certain vaccines.

The Catholic Church teaches that a person may be required to refuse a medical intervention, including a vaccination, if his or her conscience comes to this judgment. While the Catholic Church does not prohibit the use of most vaccines, and generally encourages them to safeguard personal and public health, the following authoritative Church teachings demonstrate the principled religious basis on which a Catholic may determine that he or she ought to refuse certain vaccines:

- Vaccination is not morally obligatory in principle and so must be voluntary.[1]
- There is a moral duty to refuse the use of medical products, including certain vaccines, that are created using human cells lines derived from abortion; however, it is permissible to use such vaccines only under case-specific conditions—if there are no other alternatives available and the intent is to preserve life.[2]
- A person's assessment of whether the benefits of a medical intervention outweigh the undesirable side-effects are to be respected unless they contradict authoritative Catholic moral teachings.[3]
- A person is morally required to obey his or her conscience.[4]

A Catholic may judge it wrong to receive certain vaccines for a variety of reasons consistent with these teachings, and there is no authoritative Church teaching universally obliging Catholics to receive any vaccine. An individual Catholic may invoke Church teaching to refuse a vaccine that used abortion-derived cell lines at any stage of the creation of the vaccine. More generally, a Catholic might refuse a vaccine based on the Church's teachings concerning therapeutic proportionality. Therapeutic proportionality is an assessment of whether the benefits of a medical intervention outweigh the undesirable side-effects and burdens in light of the

---

[1] Congregation for the Doctrine of the Faith (CDF), "Note on the Morality of Using Some Anti-COVID-19 Vaccines," December 17, 2020, n. 5. "At the same time, practical reason makes evident that vaccination is not, as a rule, a moral obligation and that, therefore, it must be voluntary."

[2] See Pontifical Academy for Life, "Moral Reflections on Vaccines Prepared from Cells Derived from Aborted Human Foetuses," June 9, 2005; Congregation for the Doctrine of the Faith, Instruction Dignitas personae, 2008, nn. 34-35; Congregation for the Doctrine of the Faith, "Note on the Morality of Using Some Anti-COVID-19 Vaccines," nn. 1-3. When there is a sufficiently serious reason to use the product and there is no reasonable alternative available, the Catholic Church teaches that it may be permissible to use the immorally sourced product under protest. In any case, whether the product is used or not, the Catholic Church teaches that all must make their disagreement known and request the development of equal or better products using biological material that does not come from abortions.

[3] See United States Conference of Catholic Bishops (USCCB), Ethical and Religious Directives for Catholic Health Care Services, 6th ed. (Washington, DC: USCCB Publishing, 2018), n. 28. Hereafter "ERDs."

[4] "A human being must always obey the certain judgment of his conscience. If he were deliberately to act against it, he would condemn himself." Catechism of the Catholic Church (Vatican City: Libreria Editrice Vaticana, 1993), www.vatican.va, n. 1790. Hereafter "CCC."

integral good of the person, including spiritual, psychological, and bodily goods.[5] The judgment of therapeutic proportionality must be made by the person who is the potential recipient of the intervention,[6] not by public health authorities or by other individuals who might judge differently in their own situations.

The Catholic Bishops of Colorado have affirmed this in two letters dated December 14, 2020 and March 17, 2021, concerning COVID-19 vaccines, stating:

> "The bishops of Colorado affirm that the use of some COVID-19 vaccines is morally acceptable under certain circumstances.... However, if individuals have serious moral objections or health concerns about vaccines, those concerns should be respected by society and government, and those individuals should not be forced into vaccination, contrary to their conscience. The government should not impose the COVID-19 vaccines on its citizens."[7]

Furthermore, the free-exercise clause of the U.S. Constitution's First Amendment requires state accommodation of individuals who object to vaccinations on religious grounds. Government neutrality also requires religious accommodation when the state offers secular exemptions, which is the case in Colorado for medical and non-medical exemptions[8] and exemptions through the Americans with Disabilities Act and Civil Rights Act of 1964.[9]

Vaccination is not a universal obligation and a person must obey his or her own conscience. Therefore, if a Catholic comes to an informed judgment that he or she should not receive a vaccine, then the Catholic Church requires that the person follow this judgment of conscience and refuse the vaccine. The *Catechism* is clear: "Man has the right to act in conscience and in freedom so as personally to make moral decisions. 'He must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters.'"[10]

Sincerely,

Fr. Ralph Recker OSB

Fr. Ralph Recker, OSB
Pastor
St. Mary's Catholic Church

---

[5] See ERDs, nn. 32-33; nn. 56-57; Part Three, Introduction, para. 2; Part Five, Introduction, para. 3.

[6] See ERDs, nn. 56-57. Both of these directives state that the proportionality of medical interventions is established "in the patient's judgment."

[7] *A Letter to the Faithful from the Colorado bishops on Covid-19 Vaccines.* Colorado Catholic Conference. (2020, December 15). https://cocatholicconference.org/a-letter-to-the-faithful-from-the-colorado-bishops-on-covid-19-vaccines/.

[8] *Vaccine Exemptions.* Department of Public Health and Environment. https://cdphe.colorado.gov/vaccine-exemptions

[9] *Pandemic Preparedness in the Workplace and the Americans with Disabilities Act.* U.S. Equal Employment Opportunity Commission. https://www.eeoc.gov/laws/guidance/pandemic-preparedness-workplace-and-americans-disabilities-act.

[10] CCC, n. 1782, citing Second Vatican Council, Dignitatis humanae, December 7, 1965, n. 3.

NOTES

OFFICE OF THE DIRECTOR
Office of the State Public Health Director

# Health
Oregon
Authority

Exemption K2

# COVID-19 Vaccine Religious ~~Exception~~ Request Form

exemption K2

I am requesting an ~~exception~~ from the COVID-19 vaccination on the basis of a sincerely held religious belief.

| Individual's name: | Date of birth: |
|---|---|
| Rebekah Spencer | 1/30/1981 |
| Phone number: | |
| 971-370-0365 | |
| Employer/Organization: | Job Title/Position: |
| Legacy Health | Sr. Contract Administrator |

## Please check the boxes below as appropriate and complete related questions:

☒ Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious belief and how it affects your ability to receive a COVID-19 vaccination

Please note this was previously submitted per the instructions of Legacy's Covid-19 Policy on August 23, 2021. An OHA form is not part of that policy. I do not understand why you are forcing the issue of signing an OHA form, when I am an employee of Legacy and not OHA. This is being submtted under duress, and this process with Legacy has caused extreme undue stress for myself and my family. I would also like it to go on record that I have submitted a religious exemption, and NOT an "exception." These words have different legal meanings, and I am not seeking an exception.

Per the faith of my church, vaccination is not morally obligatory in principle and so must be voluntary. Furthermore, there is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions. It is permissible to use such vaccines only under certain case-specific conditions, based on a judgment of conscience. A Catholic's informed judgments about the proportionality of medical interventions are to be respected.

Catholic doctrine teaches that a person is morally required to obey his or her sure conscience. A Catholic may judge it wrong to receive certain vaccines for a variety of reasons consistent with these teachings, and there is no authoritative Church teaching universally obliging Catholics to receive any vaccine. An individual Catholic may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines. More generally, a Catholic might refuse a vaccine based on the Church's teachings concerning therapeutic proportionality. Therapeutic proportionality is an assessment of

whether the benefits of a medical intervention outweigh the undesirable side-effects and burdens in light of the integral good of the person, including spiritual, psychological, and bodily goods. It can also extend to the good of others and the common good, which likewise entail spiritual and moral dimensions and are not reducible to public health. The judgment of therapeutic proportionality must be made by the person who is the potential recipient of the intervention in the concrete circumstances, not by public health authorities or by other individuals, including employers, who might judge differently in their own situations or faith traditions.

At the core of the Church's teaching are the first and last points listed above: vaccination is not a universal obligation and a person must obey the judgment of his or her own informed and certain conscience. In fact, the Catechism of the Catholic Church instructs that following one's conscience is following Christ Himself:

In all he or she says and does, a person is obliged to follow faithfully what he or she knows to be just and right. It is by the judgment of his or her conscience that a person perceives and recognizes the prescriptions of the divine law: "Conscience is a law of the mind; yet [Christians] would not grant that it is nothing more; . . . [Conscience] is a messenger of him, who, both in nature and in grace, speaks to us behind a veil, and teaches and rules us by his representatives. Conscience is the aboriginal Vicar of Christ."

If a Catholic comes to an informed and sure judgment in conscience that he or she should not receive a vaccine, then the Catholic Church requires that the person follow this certain judgment of conscience and refuse the vaccine. The Catechism is clear: "Man has the right to act in conscience and in freedom so as personally to make moral decisions. 'He must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters.'" To be forced to do so would be discrimination and harassment, especially on the part of an employer.

I am a 100% remote employee, and the governor's mandate does not even apply to me (please see https://sharedsystems.dhsoha.state.or.us/DHSForms/Served/le3879.pdf) and the following:

Q: Does the rule apply to staff working 100% remotely? A: No, though the Oregon Health Authority encourages all healthcare providers and all eligible Oregonians to get vaccinated in order to protect themselves and others. A healthcare provider who does not provide direct in-person patient care and does not have the potential for direct or indirect exposure to patients, residents, or infectious materials, is not subject to the vaccine requirement in OAR 333-019-1010. However, if a healthcare provider at any time does in-person patient care or, for work purposes, is at a healthcare setting where they do have the potential for direct or indirect exposure to patients, residents, or infectious materials, that provider is required to comply with the rule.

I have also been working long hours in a very stressful and short handed department. This threat to my continued employment has been very troubling and caused me to lose a lot of faith in the overall mission of Legacy. "Our mission is good health for our people, our patients, our community and our world. Above all, we will do the right thing." When families and livelihoods are being pressured under duress, even while holding valid medical and religious exemptions, it does not seem like our organization is focused on doing the right thing. For lack of a better word, this is very disheartening.

OHA 3871 (8/25/2021)

The phrases and circumstances of this letter are regarding my personal health information and my religious beliefs. This is private information that I am sharing with you, my employer, under duress of threat of termination by your recent policy and announcements regarding mandated requirements of Covid-19 vaccinations. This information is confidential. Please confirm your receipt of my exemption at your earliest convenience, and please do not hesitate to reach out with any questions. Thank you.

Respectfully submitted,

Rebekah Spencer

Senior Contracts Administrator

Legacy Health

I certify the above information to be true and accurate and that I sincerely hold the religious beliefs described above.

| Signature: | Date: |
|---|---|
| *[signature]* | 9/9/2021 |

Please note that if your ~~exception~~ Exemption request is approved, you may be required by your employer or other responsible party to take additional steps to protect you and others from contracting and spreading COVID-19. Workplaces are not required to provide this ~~exception~~ exemption accommodation if doing so would pose a direct threat to the excepted individual or others in the workplace or would create an undue hardship.

**Document accessibility:** For individuals with disabilities or individuals who speak a language other than English, OHA can provide information in alternate formats such as translations, large print, or braille. Contact the Health Information Center at 1-971-673- 2411, 711 TTY or COVID19.LanguageAccess@dhsoha.state.or.us.

OHA 3871 (8/25/2021)

# EXHIBIT "D"

Religious Exemption for: Stephanie Nyhus employee # 52700

Current position: Commercial / Unity follow up biller

Current place of work: remote, from home.

Date: 8/30/2021


I have a lifetime of following the Ten Commandments of which I sincerely believe and follow daily. Those Commandments have guided me throughout my life on my daily actions, reactions and even where I have chosen to work. Always caring for others, where it may be as a CNA, home healthcare giver for disabled adults or hospice ridden patients or working for 501c3 companies such as DePaul Treatment Center and last but not least Legacy Hospital.

Throughout my life, the Commandments have been greatly discussed in my Bible Studies and my belief that the 6th Commandment, Thou shalt not murder, pertains to why I am requesting an exemption. I sincerely and firmly believe that if I allow myself to benefit or receive anything that I know to be a developed from aborted human children or had testing done using aborted human children, which to me is murder, then I am also guilty of murder. Conception begins when sperm meets the egg. Psalm 139: 13-14, Psalm 139:16, Isaiah 44:2 and 44:24 and Jeremiah 1:5. Growth of a human child (fetal tissue) begins long before a heart is present and I firmly and sincerely believe this. I sincerely believe that when a fetus, that is living is aborted, at any time during the pregnancy, it is what I firmly and sincerely believe to be murder. God made the 6th Commandment, Thou shalt not murder for a reason. It was to protect the innocents. To kill an innocent child is a grievous sin. Exodus 20:13, Genesis 9:6 and Deuteronomy 27:25.  I myself have had miscarriages and even a fetal demise inside my womb which resulted in a D&C procedure because my body would not naturally abort the child and the loss of my children to this day affects me in the form of depression, separating myself from others, closing down my emotions and has in the past affected previous jobs.

When I found out that all three vaccines were either developed from or tested on fetal cells from aborted babies before making the decision of taking the vaccine, I went to find the information to discredit this information. In fact, I found that statement to be true from the very government that guides us in our state and federal laws. I cannot allow myself to accept these vaccines into my body as I do not wish to be complicit in murder. I have included webpage links from government sites which all confirm the vaccines were developed from or tested on aborted fetal tissue aka human children.

If I took these vaccines, I would feel completely destroyed. How would I be able to face my God or look in the mirror every day if I allowed myself to be complicit in the murder of innocents?


COVID-19_Vaccines_and_Fetal_Cells_031921_720415_7.pdf (michigan.gov)

VaccineDevelopment_FetalCellLines.pdf (lacounty.gov)

Fact Check-Johnson & Johnson's COVID-19 vaccine does not contain aborted fetal cells | Reuters

Janssen COVID-19 Vaccine EUA Fact Sheet for Recipients and Caregivers 07122021 (fda.gov)

# EXHIBIT "E"

Last updated: 8/11/21

 **LEGACY**
H E A L T H

## COVID-19 VACCINATION EXEMPTION REQUEST FORM

**INSTRUCTIONS:** Please complete this form for the applicable exemption you are seeking. If you have questions, please contact the Employee Health COVID Hotline at 503-415-5820 or COVID19@lhs.org.

Name: _Chakila Scott_                      Employee #: _42903_

Phone Number: _503 413 4352_      Email: _Chakcscott@LHS.org_

Department: _Care Management_        Site: _Emanuel_

Employee Signature: _Chakila Scott_            Date: _____

Legacy Health requires COVID-19 vaccination sufficient to achieve a fully vaccinated status for all caregivers. Legacy Health recognizes that immunization with a safe and effective vaccine is a proven strategy to reduce COVID-19 related illness for our caregivers, patients, and community. The CDC recognizes that COVID-19 vaccines are safe and effective at preventing COVID-19 disease, especially severe illness, and death.

### ☐ Medical Exemption

Please attach a signed letter from your qualified medical provider, on that medical provider's letterhead, that states the medical condition they are treating and describes a valid medical contraindication per the CDC. Please ensure that the medical provider who provides the signed letter is qualified to medically assess the condition at issue.

**Contact information for Provider:**

Provider Name (printed)_____ Telephone: _____

### ☐ Bona fide Religious Exemption

Please attach a signed letter from a religious authority in your faith community, on that religious authority's letterhead, explaining how administration of the COVID-19 vaccine conflicts with bona fide religious tenets or practices of your faith. (Please ensure the information in the letter is specific. A general philosophical or moral objection to the vaccine will not be sufficient for Legacy Health to evaluate the request or grant an exemption.)

**Contact information for Religious Leader:**

Religious Leader Name (printed)_____ Telephone: _____

Position/Title: _____

Either email this form and required letter to COVID19@lhs.org, fax to 503-415-5192 or submit to the local Employee Health office.

Legacy

To Whom It May Concern,

I am a Christian seeking religious exemption from the "Covid-19 Vaccination Requirement" imposed by either Proclamation 21-14 or by you, my employer.

I request this exemption and accommodation under the Free Exercise Clause of the First Amendment to the United States Constitution, the Americans with Disabilities Act and Civil Rights Act of 1964, based upon my sincerely held religious beliefs.

Proclamation 21-14 specifically provides that even "Health Care Providers and Workers for State Agencies **are not required to get vaccinated** against COVID-19 if they are entitled under the Americans With Disabilities Act (ADA), Title VII of the Civil Rights Act of 1964 (Title VII),  or any other applicable law to a disability-related reasonable accommodation or a sincerely held religious belief accommodation to the requirements of this order…". Proc. 21-14(2) (emphasis added).

My sincerely held religious beliefs requiring the accommodation include the following Biblical commands and principled Christian teachings:

-

  o    There is a moral duty to refuse the use of medical products, including certain vaccines, that are created using human cells lines derived from abortion during any stage of the vaccine's development, including the testing phase of development of a medical product.
  o    The body is the Temple of the Holy Spirit and we, as Christians, are compelled to protect it from defilement.
  o    Finally, when it comes to consuming things into our body as opposed to, say, making payments to the government, compliance with God's law above all is required.
  Primarily, my beliefs regarding the sanctity of human life conflict directly with any requirement to inject abortion-tainted vaccinations into my body. **All available Covid vaccines utilize abortion-derived cell lines in either the confirmation and testing stage of development or in the production process**.

Both Pfizer and Moderna vaccines "used the fetal cell line HEK 293 in the confirmation phase," while the Johnson & Johnson vaccines utilizes the "PER.C6

fetal cell line cells" "to manufacture the Johnson & Johnson vaccine."  See https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells(last visited August 10, 2021) ("Pfizer and Moderna did perform confirmation tests… using fetal cell lines. And Johnson & Johnson uses fetal cell lines in vaccine development, confirmation and production."  "All PER.C6 cells used to manufacture the Johnson & Johnson vaccine are descended from tissue taken from a … elective abortion".); https://lozierinstitute.org/update-covid-19-vaccine-candidates-and-abortion-derived-cell-lines/ (last visited August 10, 2021).

The use of abortion tainted vaccines conflicts with longstanding and well recognized anti-abortion religious teaching.  As one Christian scholar has stated, "when we use vaccines or medicines which utilize cell lines originating from aborted babies, we physically benefit from the 'fruits' of one of the greatest evils of mankind — the cruel genocide of the unborn. . . . As Christians, it is our duty to bear witness to the world by not accepting these vaccines and medicines." Likewise, citing Tobit 2:21 as binding Biblical authority, Father Michael Copenhagen has stated, "the recipient [of an abortion-tainted vaccine] is an immediate participant in the commission of continuous theft of human remains obtained through deliberate killing, their desecration through exploitation and trafficking, as well as ultimate omission to respectfully bury them."

The Bible also informs us: "Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own." 1 Corinthians 6:19.  It further instructs, "Therefore, since we have these promises, dear friends, let us purify ourselves from everything that contaminates body and spirit, perfecting holiness out of reverence for God."

2 Corinthians 7:1

Because the body is the temple of the Holy Spirit, we are compelled by Scripture to follow God's law when choosing what to put into it.  Jesus taught specifically: "Give back to Caesar what is Caesar's **and to God what is God's**." Mark 12:17 NIV (emphasis added)

As a Christian protecting my body from defilement according to God's law, I invoke my religious right to refuse any vaccine which utilized abortion-derived cell lines at *any* stage of the creation of the vaccine.  Further, insofar as the vaccines also contain neurotoxins, hazardous substances, attenuated viruses, animal parts, foreign

DNA, albumin from human blood, carcinogens and chemical wastes that are proven harmful to the human body, I find injection of the same to be in direct conflict with my Christian duty to protect my body as the temple of the Holy Spirit.  See http://www.cdc.gov/vaccines/pubs/pinkbook/downloads/appendices/b/excipient-table-2.pdf (last visited August 10, 2021).

Finally, whereas none of the currently available Covid vaccines produces a "sterilizing immunity," meaning that vaccinated individuals can (and do) still spread Covid, failure to accommodate my request for exemption and accommodation serves no legitimate purpose.  Rather, such failure to accommodate would clearly be designed solely to deter the exercise of my religious convictions.  Since Covid vaccines only recently became available, and employers had nearly a full year to learn to operate under the threat of Covid *without* the use of vaccines, employers are already well equipped to offer reasonable accommodations without undue hardship.

I respectfully request an exemption from the Covid-19 Vaccination Requirement as it violates my sincerely held religious beliefs, practice, and observance.

Sincerely,

Pastor Kenneth Ellison

# EXHIBIT "F"

**Julie Bell**
PO Box 822t
Cornelius, OR 97113
(503)314-2877
jbell@lhs.org
Clinical Charge Capture Analyst

28th August, 2021

To Whom it may concern;

I'm writing to let you know that I have included a religious exemption as well as a letter from my physician, regarding the Covid-19 Legacy Vaccine Policy. I have been employed with Legacy for nearly 28 years, in multiple departments, throughout the Legacy Health System. Currently, I have been working remotely as a Clinical Charge Capture Analyst (CCCA) since Nov 18,2020. I will continue to do so for the foreseeable future. I have only entered a Legacy facility since working remotely for the CCCA department three times to help other units with staffing crises. I will retract that offer and continue to work remotely from home where I pose no threat to the Legacy patients or staff.

Sincerely,

Julie A Bell, RN BSN CPEN

OFFICE OF THE DIRECTOR
Office of the State Public Health Director



# COVID-19 Vaccine Religious Exception Request Form

I am requesting an exception from the COVID-19 vaccination on the basis of a sincerely held religious belief.

| Individual's name: | Date of birth: |
|---|---|
| Julie A Bell | 11/12/1974 |
| Phone number: | |
| (503)314-2877 | |
| Employer/Organization: | Job Title/Position: |
| Legacy Health System | CCCA RN- remote |

## Please check the boxes below as appropriate and complete related questions:

☒ Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious belief and how it affects your ability to receive a COVID-19 vaccination

see note

I certify the above information to be true and accurate and that I sincerely hold the religious beliefs described above.

| Signature: | Date: |
|---|---|
| Julie A Bell | 08/28/2021 |

Please note that if your exception request is approved, you may be required by your employer or other responsible party to take additional steps to protect you and others from contracting and spreading COVID-19. Workplaces are not required to provide this exception accommodation if doing so would pose a direct threat to the excepted individual or others in the workplace or would create an undue hardship.

**Document accessibility:** For individuals with disabilities or individuals who speak a language other than English, OHA can provide information in alternate formats such as translations, large print, or braille. Contact the Health Information Center at 1-971-673- 2411, 711 TTY or COVID19.LanguageAccess@dhsoha.state.or.us.

OHA 3871 (8/25/2021)

**Julie Bell**

PO Box 822
Cornelius, OR 97113
(503)314-2877
jbell@lhs.org
28th August 2021

**RE: Religious Exemption Request**

To Whom it may concern;

I, Julie Bell, based on my personal religious beliefs, hereby assert my right to a religious exemption from vaccination. I hold a Christian Worldview and believe in the bible. My faith and family have become stronger since the start of the pandemic. God has set out his commandments for us to be protected from impure choices.  In this process I'm using my spirituality to let god help guide my choices using principles laid out in his words.

I hold a sincerely held belief that the Covid vaccine is in strict violation of my health convictions and conscience. All three vaccines currently available have no known long-term side effects and have caused death and long term injury. With my previous experience with medications, my faith in God, and his wisdom to guide my choice to protect my body from undue harm I have chosen to defer the use of the Covid-19 vaccine.

"And when ye shall receive these things, I would exhort you that ye would ask God, the Eternal Father, in the name of Christ, if these things are not true: and if ye shall ask with a sincere heart, with real intent, having faith in Christ, he will manifest the truth of it unto you, by the power of the Holy Ghost"

I have prayed about this decision and god is guiding me to make this decision in accordance with my faith and beliefs to protect myself and my family. Therefore, I would like to exercise my religious liberties safeguarding me from the undue influences of others and defer your vaccination requirement/enforcement. Using my Christian religious discernment and wisdom I respectfully decline at this time.


Sincerely,

Julie A Bell



# COVID-19 Vaccine Medical Exception Request Form

I am requesting an exception from the COVID-19 vaccination requirement on the basis of a diagnosed physical or mental condition that limits my ability to receive the COVID-19 vaccination, as certified by my medical provider below.

| Individual's name: | Date of birth: |
|---|---|
| Julie A Bell | 11/12/1974 |
| Phone number: (503)314-2877 | |
| Signature: | Date: 08/28/2021 |
| Employer/Organization: Legacy Health System | Job Title/Position: CCCA RN |

Please note that if your exception request is approved, you may be required by your employer or other responsible party to take additional steps to protect you and others from contracting and spreading COVID-19. Workplaces are not required to provide this exception accommodation if doing so would pose a direct threat to the excepted individual or others in the workplace or would create an undue hardship.

## Statement from Medical Provider

Your patient, named above, has requested an exception to the COVID-19 vaccination requirement due to a medical condition. Please provide the information below.

## Please check an option below and complete related questions:

☒ The patient should not receive the COVID-19 vaccination due to a medical condition.

What is the medical condition that prevents them from receiving the COVID-19 vaccination?

☐ Yes ☐ No   Is the medical condition permanent?

☐ Yes ☐ No   Is the medical condition temporary? If yes, what is the expected duration?

Please describe how this medical condition impacts their ability to receive the COVID-19 vaccination.

see letter

OHA 3870 (8/25/2021)

☐ The patient may not receive a certain type of COVID-19 vaccination. The patient may receive a vaccination manufactured by _____.

☐ The patient may receive a COVID-19 vaccination.

I certify the above information to be true and accurate.

| Printed name of medical provider:<br>Dr Barlow | Date:<br>8/20/2021 |
|---|---|
| Signature of medical provider: | Work address:<br>2725 SW Cedar Hills Blvd #250<br>Beaverton, OR 97005 |
| | Work telephone number:<br>(503)415-4060 |

**Document accessibility:** For individuals with disabilities or individuals who speak a language other than English, OHA can provide information in alternate formats such as translations, large print, or braille. Contact the Health Information Center at 1-971-673- 2411, 711 TTY or COVID19.LanguageAccess@dhsoha.state.or.us.

OHA 3870 (8/25/2021)



LEGACY MEDICAL GROUP WESTSIDE INTERNAL MEDICINE
2725 SW CEDAR HILLS BLVD # 250
BEAVERTON OR 97005-1344
503-415-4060

**LEGACY**
H E A L T H

August 20, 2021

Re:
Julie A Bell
PO BOX 822
CORNELIUS, OR 97113

To Whom It May Concern:

Julie Bell has had a severe allergic reaction to Compazine is a 16-year-old with what sounds like partial airway obstruction and 2 days in the hospital to recover. This has led to a posttraumatic stress delayed reaction regarding vaccines, specifically the COVID-19 vaccine. Although there is no known correlation between her severe allergic reaction and a potential vaccine reaction, she still has PTSD regarding the COVID-19 vaccine.
She does work as a Legacy Health employee and the governor of Oregon has ordered all healthcare employees to receive the Covid 19 vaccine series.
Julie works at home with no patient or Legacy Health contact. She has been practicing social distancing as well as wearing a mask.
She is requesting a medical exemption for the vaccine requirement for the above reasons.

Robert P Barlow , MD

# EXHIBIT "G"

**Spencer, Bekah A**

| | |
|---|---|
| **From:** | Legacy Covid Vaccine <LegacyCovidVaccine@LHS.ORG> |
| **Sent:** | Monday, September 27, 2021 11:12 AM |
| **To:** | Spencer, Bekah :LSO Supply Chain Management |
| **Subject:** | Decision on your exception request |

Thank you for submitting your exception request for the COVID-19 vaccine policy.

For your privacy, your name was removed from your exception request before it was reviewed by the exception work group. No details from your request, or the review process, have been shared with leaders or others.

The exception work group, which includes staff from Spiritual Care, Ethics, Primary Care, and Infection Prevention and Control, believes there is no ideal way to determine a sincerely held religious belief and decided to use the following criteria:

- Consistency (have you have recently received other vaccines)
- Specificity (your religious belief is clearly stated, and that religious belief is specifically against receiving the COVID-19 vaccine)

**Your request was carefully reviewed and your request for religious exception was denied because the information you provided does not meet one or more of the above criteria.**

Please know that the Exception Committee carefully reviewed and applied a consistent standard to every request. This was a detailed process intended to provide a full and thorough review.

This decision on your request provides a few days for you to consider your next steps as our Sept. 30 vaccine requirement deadline nears. Please see the instructions below from Human Resources regarding your options.

Sincerely,

COVID-19 Vaccine Exception Workgroup


**Exception Request Denial Instructions**

Because your exception is denied, you have three options:

1. Take action to keep your job by getting vaccinated as soon as possible. Use MyHealth to schedule a vaccine appointment, email EmployeeHealth@lhs.org to request one, or find one in the community. If you have vaccine questions or need help scheduling an appointment, call 503-415-4800. Please note that hotline staff are clinical experts and cannot help you with your exception request. If you've been vaccinated and need to provide documentation, email a picture of your vaccine card to covid19@lhs.org.
2. Take no action and be placed on administrative leave on Oct. 1, with termination following as soon as Oct. 19.
3. Resign your position by alerting your manager in writing.

For more information on the vaccine requirement, please visit the COVID-19 intranet's [vaccine page](#).



Legacy Health | 1919 NW Lovejoy, Portland, OR 97209

Unsubscribe raspence@lhs.org

Update Profile | Constant Contact Data Notice

Sent by legacycovidvaccine@lhs.org

2

M Gmail

Bekah Spencer <bekah.ds11@gmail.com>

## Re: Resignation Notice
3 messages

**Baker, Michelle L :LSO Mgr HR Answer Center** <MLABAKER@lhs.org>                Thu, Nov 4, 2021 at 12:59 PM
To: Bekah Spencer <bekah.ds11@gmail.com>

No, Administrative Leave does not change your status in the system. Administrative Leave is handled internally and does not change an employee's status.  We still consider you an active employee, not working any hours, while on administrative leave.  Only leaves through Sedgwick update your status to L1.

| Select | | Date | Status |
|---|---|---|---|
| → | 📁 | 10/25/2021 | A1 |
| → | 📁 | 09/27/2021 | L1 |
| → | 📁 | 02/22/2021 | A1 |
| → | 📁 | 02/22/2021 | H1 |

Michelle Baker

Manager, Human Resources Answer Center

p: 503 415 5075

**From:** Bekah Spencer <bekah.ds11@gmail.com>
**Sent:** Thursday, November 4, 2021 12:08 PM
**To:** Baker, Michelle L :LSO Mgr HR Answer Center <MLABAKER@LHS.ORG>
**Subject:** [EXTERNAL] Re: Resignation Notice

---
This message has originated from an **External Source**. Please use caution when opening attachments, clicking links, or responding to this email.
---

Thank you so much Michelle. While an active employee, does it say anything about me being on unpaid administrative leave? I've never received formal notice that I was on it, but I just assumed since Rudolfo Vera requested I turn in my badge and equipment?

Thanks!

Bekah Spencer

Sent from my iPhone

On Nov 3, 2021, at 4:39 PM, Baker, Michelle L :LSO Mgr HR Answer Center <MLABAKER@lhs.org> wrote:

Hi Bekah,

I've attached the Resignation Notice.  As we discussed, we did not process the termination in Infor Lawson.  However, my team member that is processing terminations did send the term form to Payroll yesterday before 10 am (cut off time to have manual checks process) to issue the final check but paused on data entering it into Lawson when she realized the Resignation Notice says submitted on behalf of Bekah Spencer.  She brought it to my attention and then I reached out to you.  As I mentioned, you had an APL balance of 4.56 - so a manual paper check was issued and sent to and mailed to your home address yesterday.  I didn't realize that the check had been cut until I double checked with her this morning asking if the resignation notice was submitted along with the termination form by Rudy.  She confirmed that it was and let me know about the manual check.

**Gross amount: $228 and Net Pay: $135.57.  Screen shots of Pay, Taxes, and Deductions below:**

<image007.jpg>

<image006.png>

<image008.png>

<image009.png>

<image010.png>

**You are still an active employee and have not been terminated.  Lawson screenshot below:**

After we talked yesterday, I sent a communication to COVID19@lhs.org (The COVID19 Vaccine Exception Workgroup) alerting them that you did not resign and were still out on unpaid admin leave awaiting a response to your religious exemption request and shared that 14 days of unpaid leave post return to work date of 10/25/2021 is 11/08/2021. I hope you have heard from them.  If you don't hear anything by tomorrow, let me know and I'll follow up again.


Take Care~

Michelle


Michelle Baker

Manager, Human Resources Answer Center

p: 503 415 5075

---

**From:** Bekah Spencer <bekah.ds11@gmail.com>
**Sent:** Tuesday, November 2, 2021 4:33 PM
**To:** Baker, Michelle L :LSO Mgr HR Answer Center <MLBAKER@LHS.ORG>
**Subject:** [EXTERNAL] Re emails from Rudy

---

> This message has originated from an **External Source**. Please use caution when opening attachments, clicking links, or responding to this email.

---

Hi Michelle,

Thanks for your call today. Below please see the initial emails from 9/24/21 from my manager, Rudolfo (Rudy) Vera requesting my badge and gear, and me asking if this meant he was terminating me and him saying no. I will forward the most recent email he sent about this also, which lead to me dropping off my equipment. As we discussed, I did not at any time resign from my position at Legacy. As far as I have been told, I am still on unpaid administrative leave and am waiting to hear a response to my resubmitted religious exemption.

For your records, is it possible to receive a copy of the resignation form Rudy submitted regarding me?

All the best,

Bekah Spencer


Sent from my iPhone

Begin forwarded message:

> **From:** "Spencer, Bekah :LSO Supply Chain Management" <RASPENCE@lhs.org>
> **Date:** September 24, 2021 at 2:41:40 PM PDT
> **To:** Bekah Spencer <bekah.ds11@gmail.com>
> **Subject:** Fwd: Sick day today


Bekah Spencer

Sr. Contract Administrator

Supply Chain Management

Legacy Health

---

Get Outlook for iOS

**From:** Vera, Rodolfo :LSO Mgr Supply Chain Cntrct Source <RVERA@LHS.ORG>
**Sent:** Friday, September 24, 2021 2:15 PM
**To:** Spencer, Bekah :LSO Supply Chain Management
**Subject:** RE: Sick day today

Hi Bekah,

Sorry you feel that way. By you turning in your gear is not termination. As part of the administrative leave your equipment and badge would be set aside to ensure you're not using anything while you're gone.

**September 30 vaccine requirement deadline**

Employees who have not yet completed a vaccine series by the September 30 deadline will be placed on unpaid administrative leave on October 1. This means that their badge access and network access will be disabled and they will not be scheduled for work. We will provide leaders with a tip sheet about coding time for employees on administrative leave.

If you have employees who are not in compliance with the vaccine requirement yet, please let them know to watch for a mailing that will be sent to their home next week about what to expect if they go on administrative leave.

**Exception request decision process**

The Exception Work Group is in the process of evaluating the 787 religious and medical exceptions submitted by employees. They are moving as quickly as possible, but it will take time to process all the requests. And in some instances, they will need to request more information from employees about their request.

We are still determining the accommodations for employees who get approved for an exception. It is possible that accommodation for employees with an approved exception will be to move them from unpaid administrative leave to unpaid personal leave. A final decision has not yet been made, but I wanted you to be aware of the possibility of this for planning purposes. Once we have decided about accommodations for approved exceptions, we will communicate these details with leaders and with employees who have made a request.

Employees with exception requests pending, please remind them of the following:

> Communications about their request will be sent to their work email and their personal email if they provided it, so please check it frequently.

> The Exception Work Group is making every effort to process all requests ahead of the September 30 deadline, but anyone who has not completed a vaccination series by that date will have to go on unpaid administrative leave even if they have a pending request.

> It is likely that many religious exception requests will still be pending as of September 30.

Working this morning is fine. I was trying to be accommodating if you felt that you needed the day off. Yes if you work a few hours then would say you're okay just continue to keep me updated (like you have).

Kind regards,

Rudy

<image003.jpg>

**Rudy Vera**
**Strategic Sourcing & Contract Manager | Supply Chain Solutions**

rvera@lhs.org | Office 503-944-4239 | Cell 360-984-9102

2850 NW 31st Ave.| Portland, OR 97210

---

**From:** Spencer, Bekah :LSO Supply Chain Management <RASPENCE@LHS.ORG>
**Sent:** Friday, September 24, 2021 12:24 PM
**To:** Vera, Rodolfo :LSO Mgr Supply Chain Cntrct Source <RVERA@LHS.ORG>
**Subject:** Re: Sick day today

Hi Rudy,

Since administrative leave sounds like termination as I'm turning in my equipment and my badge, can I please get this in official writing? I would also appreciate it being in writing why I am being terminated, and I would appreciate it to have included that I have submitted,according to policy, a religious exemption. I followed the policy to the letter, as HR knows. They have chosen not to respond. I in no way have failed to follow policy.

I can bring my equipment and badge in Thursday morning after I drop my kids off at school if that works for you?

I did work this morning on quite a few projects for a couple of hours so if I take an APL day today how will I be compensated for my work today? It was my understanding when you are salary you are compensated for the day you work but if I am misunderstanding should I just enter a few hours of APL?

Thanks Rudy,

Bekah

Bekah Spencer

Sr. Contract Administrator

Supply Chain Management

Legacy Health

Get Outlook for iOS

**From:** Vera, Rodolfo :LSO Mgr Supply Chain Cntrct Source <RVERA@LHS.ORG>
**Sent:** Friday, September 24, 2021 10:36:54 AM
**To:** Spencer, Bekah :LSO Supply Chain Management <RASPENCE@LHS.ORG>
**Subject:** RE: Sick day today

Hi Bekah,

Sorry to hear that. Please take APL today.

"In preparation for next Friday being your first day on administrative leave, we have a checklist to go through for the transition. What time Sept 30th, Thursday, would you like to meet at the office for the equipment turn in?

We will need to do the following on by Sept 30th EOD

1. Sept 30th Thursday EOD, we will need to collect the computers and equipment
2. Please make sure an OOO Message is placed on both emails making sure anyone who emails them knows to contact the backup person ASAP instead (My name for now)
3. Please turn in your badge, as your IS access (Infor, email, etc.) and badge access will be disabled by EOD Sept 30th. (stop working).
4. Any APL they have will be automatically used towards their unpaid leave. If you <u>do not want to use their APL</u>, you must let me know by Sept. 30.
5. Please start copying me on ALL email communications going forward.
6. I'll put something on the calendar for next week to schedule a transition meeting.

          Please put a list of projects contacts, status and stakeholders you're working.

Kind regards,
Rudy

<image004.jpg>    **Rudy Vera**
                  **Strategic Sourcing & Contract Manager | Supply Chain Solutions**
                  rvera@lhs.org | Office 503-944-4239 | Cell 360-984-9102
                  2850 NW 31st Ave.| Portland, OR 97210

---

**From:** Spencer, Bekah :LSO Supply Chain Management <RASPENCE@LHS.ORG>
**Sent:** Friday, September 24, 2021 6:37 AM
**To:** Vera, Rodolfo :LSO Mgr Supply Chain Cntrct Source <RVERA@LHS.ORG>
**Subject:** Sick day today

Hi Rudy,

I'm so sorry to have to take a day off, I know we are in the middle of a lot of initiatives right now. My appointment with the eye doc didn't go great, and I am waiting on some more testing but as of right now the thought is stress and blood pressure issues injured my eye, and it is not recovering due to high levels of chronic stress the past few weeks. Because of that I have been advised to take some time off. I am hoping it will be improved by Monday and will let you know ASAP. I am wrapping a few items early this morning and will be away from the computer the rest of the day (so have been working early this morning). Not sure if I need to take APL today or not, so please let me know.

Thanks Rudy.

All the best,
Bekah

<image005.jpg>    **Bekah Spencer**
                  **Sr. Contract Administrator**
                  **Supply Chain Management**
                  raspence@lhs.org | Office 503-944-4240 | Cell 971-370-0365
                  2850 NW 31st Ave.| Portland, OR 97210

<ResignNoticeLAWSON-Bekah+Spencer.doc>

---

**Bekah Spencer** <bekah.ds11@gmail.com>                                   Thu, Nov 4, 2021 at 2:11 PM
To: "Baker, Michelle L :LSO Mgr HR Answer Center" <MLABAKER@lhs.org>

Thanks Michelle, that makes sense and is helpful.

All the best,

Bekah Spencer

Sent from my iPhone

On Nov 4, 2021, at 12:59 PM, Baker, Michelle L :LSO Mgr HR Answer Center <MLABAKER@lhs.org> wrote:

No, Administrative Leave does not change your status in the system. Administrative Leave is handled internally and does not change an employee's status. We still consider you an active employee, not working any hours, while on administrative leave. Only leaves through Sedgwick update your status to L1.

<image001.png>

[Quoted text hidden]

---

**Bekah Spencer** <bekah.ds11@gmail.com>                                   Mon, Sep 26, 2022 at 1:34 PM
To: Bekah Spencer <bekah.ds11@gmail.com>

Sent from my iPhone

Begin forwarded message:

**From:** Bekah Spencer <bekah.ds11@gmail.com>
**Date:** November 4, 2021 at 2:11:01 PM PDT

**To:** "Baker, Michelle L :LSO Mgr HR Answer Center" <MLABAKER@lhs.org>
**Subject: Re: Resignation Notice**

Thanks Michelle, that makes sense and is helpful.

[Quoted text hidden]

# EXHIBIT "H"

Please print the denial portion: Decision on your exception request

From: s w (runpooka@yahoo.com)

To: sffej@yahoo.com

Date: Monday, September 27, 2021, 12:27 PM PDT

**From:** COVID-19 Vaccine Exception Workgroup <legacycovidvaccine@lhs.org>
**Sent:** Monday, September 27, 2021 11:12 AM
**To:** Nyhus, Stephanie G :LSO Patient Business Svc <SNYHUS@LHS.ORG>
**Subject:** Decision on your exception request

Deadline to complete vaccine series is Thursday

Thank you for submitting your exception request for the COVID-19 vaccine policy.

For your privacy, your name was removed from your exception request before it was reviewed by the exception work group. No details from your request, or the review process, have been shared with leaders or others.

The exception work group, which includes staff from Spiritual Care, Ethics, Primary Care, and Infection Prevention and Control, believes there is no ideal way to determine a sincerely held religious belief and decided to use the following criteria:

- Consistency (have you have recently received other vaccines)
- Specificity (your religious belief is clearly stated, and that religious belief is specifically against receiving the COVID-19 vaccine)

**Your request was carefully reviewed and your request for religious exception was denied because the information you provided does not meet one or more of the above criteria.**

Please know that the Exception Committee carefully reviewed and applied a consistent standard to every request. This was a detailed process intended to provide a full and thorough review.

This decision on your request provides a few days for you to consider your next steps as our Sept. 30 vaccine requirement deadline nears. Please see the instructions below from Human Resources regarding your options.

Sincerely,

COVID-19 Vaccine Exception Workgroup

**Exception Request Denial Instructions**

Because your exception is denied, you have three options:

1. Take action to keep your job by getting vaccinated as soon as possible. Use MyHealth to schedule a vaccine appointment, email EmployeeHealth@lhs.org to

request one, or find one in the community. If you have vaccine questions or need help scheduling an appointment, call 503-415-4800. Please note that hotline staff are clinical experts and cannot help you with your exception request. If you've been vaccinated and need to provide documentation, email a picture of your vaccine card to covid19@lhs.org.

2.  Take no action and be placed on administrative leave on Oct. 1, with termination following as soon as Oct. 19.

3.  Resign your position by alerting your manager in writing.

For more information on the vaccine requirement, please visit the COVID-19 intranet's vaccine page.



Legacy Health | 1919 NW Lovejoy, Portland, OR 97209

Unsubscribe snyhus@lhs.org

Update Profile | Constant Contact Data Notice

Sent by legacycovidvaccine@lhs.org

# EXHIBIT "I"



**LEGACY**
H E A L T H



October 20, 2021

Dear Chakila,

**This letter is to advise you that our records show that you have not received or started a COVID-19 vaccine series by the October 18, 2021, deadline. Because of this, your employment was administratively terminated effective on October 19, 2021, for failure to comply with the COVID-19 Vaccine Policy. If you started (or completed) your vaccine series before Oct 18, please email a picture of your vaccine card to employeehealth@lhs.org immediately so that we can update our records and reinstate your employment.** Once verified, we will place you back on unpaid administrative leave and contact you regarding next steps for compliance and return to work.

My previous letters to you in August and September provided notice of Legacy's new COVID-19 vaccine requirement and the corresponding state mandates. These communications stated that all Legacy Health employees were required to complete their vaccine series by Sept. 30, 2021. Employees were notified that if not compliant by this date, they would be placed on Unpaid Administrative Leave starting October 1, pending eventual separation from employment.

**Your final paycheck for all hours owed to you through October 19, including a cash out of your accrued and unused APL, was paid as a direct deposit on October 20 with your paystub mailed separately. For those without direct deposit a check was placed in the mail on October 20. Employees enrolled in medical, dental, vision and flexible spending accounts through Legacy will continue to be covered until October 31, 2021.** Thereafter, employees may continue coverage via COBRA enrollment. Information will be sent to you by PacificSource about how to elect continuation through COBRA.

If you have personal belongings to collect or Legacy property to turn in, please contact your manager to make arrangements. Legacy property includes items such as badge, keys, laptop or desktop computer, furniture, issued scrubs or Legacy materials or documents.

We know that this has been a stressful time with difficult choices to make. We respect that you needed to make the best decision for yourself. We want to express that we appreciate your past service to Legacy and wish you well.

Sincerely,

*Sonja Steves*

Sonja Steves, MBA, SPHR, SHRM-SCP
Senior Vice President and Chief Human Resources Officer

# EXHIBIT "J"

**rhacke@pji.org**

| | |
|---|---|
| **From:** | Bell, Julie A :LSO Care Management <JBELL@LHS.ORG> |
| **Sent:** | Thursday, September 30, 2021 10:48 AM |
| **To:** | cricket74@gmail.com |
| **Subject:** | FW: COVID-19 Exception Request |

*Julie Bell, RN BSN CPEN*
*Charge Capture Analyst*
*jbell@lhs.org*

**From:** Legacy Covid Vaccine <LegacyCovidVaccine@LHS.ORG>
**Sent:** Thursday, September 30, 2021 10:37 AM
**To:** Legacy Covid Vaccine <LegacyCovidVaccine@LHS.ORG>
**Subject:** COVID-19 Exception Request

Hello,

Thank you for submitting your exception request for the COVID-19 vaccine policy.

For your privacy, your name was removed from your exception request before it was reviewed by the exception work group.  No details from your request, or the review process, have been shared with leaders or others.

The exception work group, which includes staff from Spiritual Care, Ethics, Primary Care, and Infection Prevention and Control, believes there is no ideal way to determine a sincerely held religious belief and decided to use the following criteria:

- Consistency (have you have recently received other vaccines)
- Specificity (your religious belief is clearly stated, and that religious belief is specifically *against* receiving the COVID-19 vaccine)


Your request was carefully reviewed and your request for religious exception was denied because the information you provided does not meet one or more of the above criteria.

Please know that the Exception Committee carefully reviewed and applied a consistent standard to every request. This was a detailed process intended to provide a full and thorough review.

This decision on your request provides a few days for you to consider your next steps as our Sept. 30 vaccine requirement deadline nears. Please see the instructions below from Human Resources regarding your options.

Sincerely,


COVID-19 Vaccine Exception Workgroup

<u>Exception Request Denial Instructions</u>

Because your exception is denied, you have three options:

- Take action to keep your job by getting vaccinated as soon as possible. Call Employee Health at 503-415-5300 or use MyHealth to schedule a vaccine appointment or find one in the community.  If you've been vaccinated and need to provide documentation, email a picture of your vaccine card to covid19@lhs.org.

- Quit your job by resigning from your position
- Take no action and be placed on administrative leave on Oct. 1, with termination following as soon as Oct. 19.

For more information on the vaccine requirement, please visit the COVID-19 intranet's vaccine page.

**rhacke@pji.org**

| | |
|---|---|
| **From:** | Bell, Julie A :LSO Care Management <JBELL@LHS.ORG> |
| **Sent:** | Friday, October 1, 2021 9:35 AM |
| **To:** | COVID19 |
| **Cc:** | cricket74@gmail.com; Vetter, Treva J :LSO Mgr Clinical Documentation |
| **Subject:** | Appeal |
| **Attachments:** | Religious exemption Letter 2021.pdf; 2021-08-20 - Dr Barlow Letter Covid-19 Exemption.pdf |

Dear Covid Group,

I would like to appeal the panels conclusion regarding my request for both medical and religious exemptions. My understanding is that the OHA mandate specifically excludes remote workers. In my current fulltime position at Legacy, for almost a year, I have never physically been in the presence of any patients, co-workers, or management. During this time including the interview process, daily work, meetings, and all training I have been fully remote from home. Did the covid exception panel consider the letter from my physician in the review process? The letter from my physician explaining his diagnosis that I should not receive this vaccine specifically. Was this letter given consideration? My religious request was declined due to my previous vaccine status, which has no bearing on my truly held beliefs. As an employee who has dedicated most of my life to this company, for just shy of 28 years, I am requesting the panel reconsider their decisions. I pose no threat in my current position to patients or staff as corroborated by my own physician. Please reconsider your decision in my case . Please follow your own mission statement "do the right thing". I will reattach all my paperwork.

Julie Bell, RN BSN CPEN
Charge Capture Analyst
jbell@lhs,org
cricket74@gmail.com(home)

1

**Archived:** Monday, May 22, 2023 12:19:32 PM
**From:** Legacy Covid Vaccine
**Sent:** Wed, 13 Oct 2021 21:56:28 +0000
**Subject:** Appeal Exception Request Decision
**Importance:** high

---

Dear Julie,

Thank you for submitting your appeal to your vaccine exception request denials.  As we indicated, Legacy reviewed appeals to ensure the vaccine workgroup's  process was followed properly. In your  case, we can confirm that all steps in the exception review process were followed and the denials of your exception requests stand.

Your options remain the same at this time: receive the vaccine (you must begin the vaccine series or receive the single shot J&J vaccine by October 18 to remain employed), resign your position or remain on unpaid leave until October 18, with administrative termination to follow on October 19. We understand you may be frustrated with the decision on your exception request, however, this is the final decision on this matter. There is no more information that will be forthcoming through this process.

Regards,

COVID19 Vaccine Exception Review Workgroup

# EXHIBIT "K"



**CHRISTINA E. STEPHENSON**
Labor Commissioner

March 3, 2023

REBEKAH A SPENCER
C/O JANZEN LEGAL SERVICES, LLC
4550 SW HALL BLVD
BEAVERTON, OR 97005

RE:    Complainant:    Rebekah A Spencer
       Respondent:     Legacy Health
       Case #:         EEEMRG220803-11199
       EEOC #:         38D-2022-00769

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been closed because the Complainant has withdrawn and informed us of intention to go to court.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. ***Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation.</u>***

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If your case involves an Occupational Safety and Health Administration (OSHA) retaliation complaint, Complainants who choose to withdraw their case to federal or state court will forfeit their rights to appeal this Oregon Bureau of Labor and Industries determination with OSHA.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing:** March 3, 2023

Enclosure(s)
cc:    Ray D Hacke, Complainant's Attorney

   

# EXHIBIT "L"



**CHRISTINA E. STEPHENSON**
Labor Commissioner

March 3, 2023


STEPHANIE G NYHUS
C/O JANZEN LEGAL SERVICES, LLC – RUGGED LAW
4550 SW HALL BLVD.
BEAVERTON, OR 97005


RE:  Complainant:  Stephanie G Nyhus
      Respondent:  Legacy Health
      Case #:  EEEMRG220517-10688
      EEOC #:  38D-2022-00497

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: March 3, 2023

Enclosure(s)
cc:  Ray D Hacke, Complainant's Attorney

 Portland · Salem · Eugene
 oregon.gov/boli
Help@boli.oregon.gov
 971-245-3844
Ore. Relay TTY: 711


# EXHIBIT "M"

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Seattle Field Office**
909 First Avenue ,Suite 400
Seattle ,Washington ,98104
(206) 220-6884
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC Forms 161 & 161-A)

## Issued On: 02/21/2023

**To:** Chakila M Scott
C/o Caroline Hoffman Janzen
Janzen Legal Services
4550 SW Hall Blvd
Beaverton, OR 97005

Charge No: 38D-2022-00295

EEOC Representative:      Kristine Jensen Nube, State Local & Tribal Progs. Mgr.

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.) Please retain this notice for your records.

On Behalf of the Commission:

Elizabeth Cannon, Seattle Field Office Director

Cc: Legal Dept
Legacy Health
1919 NW Lovejoy St
Portland, OR 97209

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://eeoc.gov/filing-lawsuit

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://eeoc.gov/filing-lawsuit

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney. You must contact the Court directly about this.

### HOW TO REQUEST YOUR CHARGE FILE

Under the workshare agreement between EEOC and the Fair Employment Practice Agencies (FEPAs), your case was investigated by the FEPA you filed with and dual-filed with EEOC. Please contact the FEPA you filed with for a copy of your case file. (For example: Anchorage Equal Rights Commission, Alaska Human Rights Commission, Idaho Human Rights Commission, Montana Human Rights Bureau, Oregon Bureau of Labor and Industries, Seattle Office for Civil Rights, Tacoma Human Rights Commission or Washington State Commission on Human Rights)

Since a lawsuit must be filed within 90 days of this notice, please submit your written request for the charge file promptly to the appropriate FEPA to allow sufficient time for them to respond to your request

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

We recommend that you and your attorney (if you retain one) review the resources at eeoc.gov/laws/guidance/fact-sheet-eeocs-final-regulations-implementing-adaaa

# EXHIBIT "N"

April 28, 2023



**CHRISTINA E. STEPHENSON**
Labor Commissioner

JULIE BELL
PO BOX 822
CORNELIUS, OR 97113

RE:    Complainant:    Julie Bell
       Respondent:     Legacy Health
       Case #:         STEMRG230105-10433

Enclosed is a copy of the complaint of unlawful discrimination you filed with the *Civil Rights Division* on January 5, 2023.

This complaint been closed because the Complainant has withdrawn and informed us of *intention to go to court.*

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.*

Further, if the Respondent is a public entity, to preserve the right to a file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
*CIVIL RIGHTS DIVISION*
Administrative Support Unit

**Date of Mailing**: April 28, 2023

Enclosure(s)
cc:    Ray D Hacke, Complainant's Attorney

 Portland · Salem · Eugene
 oregon.gov/boli
Help@boli.oregon.gov
 971-245-3844
Ore. Relay TTY: 711


 CamScanner

# EXHIBIT "O"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days    Add Days    Workdays    Add Workdays    Weekday    Week №

From **Friday, March 3, 2023**
Added 90 days

## Result: Thursday, June 1, 2023

### Calendar showing period from March 3, 2023 to June 1, 2023

| **March 2023** | | | | | | |
|---|---|---|---|---|---|---|
| 28 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

| **April 2023** | | | | | | |
|---|---|---|---|---|---|---|
| 30 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

| **May 2023** | | | | | | |
|---|---|---|---|---|---|---|
| 31 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

| **June 2023** | | | | | | |
|---|---|---|---|---|---|---|
| 1 day added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

☐ = Start date (Mar 3, 2023)    ☐ = Final result date (Jun 1, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

# EXHIBIT "P"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days      Add Days      Workdays      Add Workdays      Weekday      Week №

From **Friday, March 3, 2023**
Added 90 days

## Result: Thursday, June 1, 2023

### Calendar showing period from March 3, 2023 to June 1, 2023

| March 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 28 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

| April 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 30 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

| May 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 31 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

| June 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 1 day added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

☐ = Start date (Mar 3, 2023)    ☐ = Final result date (Jun 1, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

Advertising

# EXHIBIT "Q"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days      Add Days      Workdays      Add Workdays      Weekday      Week №

From **Tuesday, February 21, 2023**
Added 90 days

## Result: Monday, May 22, 2023

### Calendar showing period from February 21, 2023 to May 22, 2023

| February 2023 |||||||
|---|---|---|---|---|---|---|
| 7 days added |||||||
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | | | | |

| March 2023 |||||||
|---|---|---|---|---|---|---|
| 31 days added |||||||
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

| April 2023 |||||||
|---|---|---|---|---|---|---|
| 30 days added |||||||
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

| May 2023 |||||||
|---|---|---|---|---|---|---|
| 22 days added |||||||
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

☐ = Start date (Feb 21, 2023)    ☐ = Final result date (May 22, 2023)

 **Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

# EXHIBIT "R"

MAY 19

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

**Count Days**      **Add Days**      **Workdays**      **Add Workdays**      **Weekday**      **Week №**

From **Friday, April 28, 2023**
Added 90 days

## Result: Thursday, July 27, 2023

### Calendar showing period from April 28, 2023 to July 27, 2023

| April 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 2 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | **28** | 29 |
| 30 | | | | | | |

| May 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 31 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

| June 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 30 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

| July 2023 | | | | | | |
|---|---|---|---|---|---|---|
| 27 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | **27** | 28 | 29 |
| 30 | 31 | | | | | |

☐ = Start date (Apr 28, 2023)    ☐ = Final result date (Jul 27, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.